**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **3:14-CR-0257** |
| **SUSAN KEVRA-SHINER,** | : | |
| **Defendant** | : | **(JUDGE MANNION)** |

## MEMORANDUM

Pending before the court is the July 29, 2017 counseled motion of defendant Susan Kevra-Shiner for bail pending her appeal of her judgment of sentence pursuant to 18 U.S.C. §3143(b). (Doc. 112). Defendant simultaneously filed her brief in support of her motion. (Doc. 113). The government filed its brief in opposition to the motion on August 3, 2017. (Doc. 115). The court has considered the arguments of the parties and will **DENY** defendant's motion.


## I.    BACKGROUND

On January 28, 2016, the defendant, an attorney, was found guilty by a jury of seven counts related to illegally issuing and selling her clients title insurance policies knowing that she was no longer an agent of the title insurance company and that the policies were not authorized by the insurance company. (Doc. 72). Specifically, the defendant was convicted of seven

counts of mail fraud, 18 U.S.C. §1341.[1] A hearing was held regarding the defendant's objections to the Pre-Sentence Report ("PSR") on July 17, 2017. The court overruled all but one of the defendant's objections. On July 17, 2017, the defendant was sentenced to 24-month concurrent prison terms on each count, three years of supervised release, a $700 special assessment, and ordered to pay $67,957.29 restitution. (Doc. 110). The defendant has remained on bond after her trial and her sentencing. The defendant was ordered by the court to surrender to the Federal Bureau of Prisons ("BOP") on August 11, 2017 to commence serving her prison sentence.[2] On July 29, 2017, the defendant filed her instant motion for release pending appeal. Also, on July 29, 2017, the defendant filed her notice of appeal. (Doc. 111). *See* C.A. No. 17-2655, Doc. 114.

## II.    DISCUSSION

The defendant filed her motion pursuant to 18 U.S.C. §3143(b), which applies to bail pending an appeal. The defendant appeals issues related to her trial as well as issues related to her sentencing. "The Bail Reform Act of

---

[1]This case was originally assigned to the Honorable Edwin M. Kosik of this court who presided over the defendant's trial. This case was reassigned to the undersigned judge on September 6, 2016.

[2]On August 10, 2017, the court stayed the date defendant was to surrender to the BOP for service of her until it decided the instant motion. (Doc. 117).

1984 was enacted because Congress wished to reverse the presumption in favor of bail that had been established under the prior statute ...." United States v. Miller, 753 F.2d 19, 22-23 (3d Cir. 1985). Under 18 U.S.C. §3143(b), a defendant appealing her conviction may be released pending appeal only if a court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released ...; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in-
> (I) reversal,
> (ii) an order for a new trial,
> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

In Miller, 753 F.2d at 24, the Third Circuit stated that "the defendant now has the burden of proving if s/he seeks bail pending appeal" and that the court must find the following:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
> (2) that the appeal is not for purpose of delay;
> (3) that the appeal raises a substantial question of law or fact; and
> (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

The defendant contends that she satisfies all of the above criteria delineated in *Miller*. The government argues that she fails to meet the second,

third and fourth prongs of the *Miller* test.

Initially, the court finds that the defendant is not likely to flee and that she does not pose a danger to the community if she is released. Indeed, after the defendant entered a plea of not guilty and she was released pending trial on October 20, 2014, (Doc. 9, Doc. 10), and since that time, she has abided by her conditions of release. The government concedes the first *Miller* factor. (*See* Doc. 115, p. 2) ("The Government does not believe that Kevra-Shiner is likely to flee or that she poses a danger to the community."). In fact, as defendant points out, (Doc. 113, pp. 3-4), "[she has demonstrated that she is not likely to flee or be a danger to any person or the community based upon the past 2 ½ years of law abiding behavior she has lived while this case has been pending" and, "[she] would remain at her home in Lackawanna County, residing with her son and husband while she awaits the appeal on this non-violent offense."

The court also finds that the defendant has shown that her appeal is not for the purpose of delay "as the appellate issues are raised in the good faith belief that they are meritorious and deserve consideration on appeal." (Id., p. 4). The court also notes that the defendant has no record trying to delay any phase of her criminal proceeding, and that her instant appeal is not filed for the purpose of any delay.

"The Government submits, however, that Kevra-Shiner's appeal does

not raise a substantial question of law or fact that is likely to result in reversal of her conviction, an order for a new trial, a sentence that does not include imprisonment, or a reduced sentence to a term of imprisonment less than the time already served plus the expected duration of the appeal." (Doc. 115, p. 2). The issues raised by the defendant in her appeal regarding her sentence are essentially the issues she advanced with respect to her objections to PSR. As the court found merit to only one of the defendant's objections, the court agrees with the government that the defendant has not shown that her appeal raises a substantial question of law or fact likely to result in a new trial or a new sentence shorter than the anticipated duration of the appeal.

Regarding the third *Miller* element, the court finds that the defendant's appeal does not raise a substantial question of law or fact. "A 'substantial question' is one that is both 'significant' and 'either novel, which has not been decided by controlling precedent, or which is fairly doubtful.'" U.S. v. Johnson, 2010 WL 1688547, *2 (E.D. Pa. April 26, 2010) (citing Miller, 753 F.2d at 23). A significant question is one where the defendant has shown that the issue is "debatable among jurists", that a court could resolve the issues in a different manner, or that the question is "adequate to deserve encouragement to proceed further." U.S. v. Smith, 793 F.2d 85, 89 (3d Cir. 1986) (citations omitted). The decision as to whether a question is substantial "must be determined on a case-by-case basis." Id. (citations omitted).

The issues on appeal which the defendant raises regarding her trial are as follows:

> a. Defense Counsel objected to the description of a piece of paper as being an email the Government argued was a critical admission of guilt by Ms. Kevra, as it appeared to have been improperly redacted and was actually part of a larger thread; therefore, it should have been excluded. [January 27, 2017 Page 17, Line 7]
> b. During Trial, names of all individuals alleged to be victims of the fraud but not named as the seven victims were displayed to the jury inadvertently by the Government; these names were not used during voir dire to screen jurors for potential conflicts as the parties agreed that these individuals would not be mentioned by name. [See January 28, 2017 Page 41 Line 16]
> c. Defense Counsel's request for a juror questionnaire was improperly denied as it would have screened potential jurors for knowledge of individuals names that were listed on HUD forms and inadvertently displayed to the jury during Trial by the Government. (Doc. 57).
> d. Trial Court erred in denying Defendant's Motion for Judgment of Acquittal. (Doc. 79, 81, 87)

(Doc. 112, pp. 3-4).

The defendant frames her three sentencing issues that she raises on appeal as follows:

> First, whether a Defendant has a Due Process Right to be sentenced by the judge who presided over Trial. Second, whether a Sentencing Judge who did not preside over Trial is *per se* precluded from imposing a sentencing enhancement based upon a finding that a defendant perjured herself. Third, how to apply the loss analysis under 2B1.1 where the Government has not provided evidence that the loss will occur – i.e. the insurance policies will be dishonored.

(Doc. 113, p. 5).

As her final appeal issue related to her sentencing, the defendant states that "[she] requested that the Court not impose the position of trust or skill enhancement despite the fact that she was licensed through the Insurance Commission as such a license would not meet the requirement of 'substantial education, training or licensing' set forth in United States v. Pardo, 25 F.3d 1187, 1192 (3rd Cir. 1994); if granted, this would have reduced the sentencing range by two levels or from 8-14 (if the relief in the above paragraph is granted) down to 4-10 months (a Zone B Sentence)." (Doc. 112, pp. 5-6).

The defendant maintains that "[b]oth of [her] first two [sentencing] issues would raise a substantial question on appeal based upon the lack of controlling precedent as noted in *Miller*" and that the Third Circuit has not provided "clear guidance" in situations when a sentencing judge is different than the trial Judge. However, as the government points out, "[t]he defense has no case law, from any circuit, to support its claim [that her Due Process Rights were violated when she was sentenced by Judge Mannion, who was not her trial judge] and therefore it should be disregarded." (Doc. 115, p. 6). Further, as the government states "[n]othing in the Due Process Clause states that a trial judge must also be the sentencing judge." (Id.).

Moreover, there is no constitutional right to be sentenced by the same judge who presided at trial. United States v. Fitzpatrick, 548 F.2d 105, 107 (3d Cir. 1977) ("[Third Circuit] [did] not recognize a constitutional right to be

7

sentenced by one's trial judge in every case."); *see also* Winter v. U.S., 928 F.2d 1134 (6th Cir. 1991) (Sixth Circuit held that "Winter was not prejudiced by the substitution of Judge Johnstone for Judge Ballantine at sentencing." (citing United States Ex Rel. Fields v. Fitzpatrick, 548 F.2d 105, 107 and 108-09 (3rd Cir. 1977); United States v. McCallie, 554 F.2d 770, 773-74 (6th Cir. 1977)).

In the instant case, Fed.R.Crim.P. 25(b) governs the circumstance where a trial judge is unable to sentence a defendant, and it provides:

(b) After a Verdict or Finding of Guilty.

(1) In General. After a verdict or finding of guilty, any judge regularly sitting in or assigned to a court may complete the court's duties if the judge who presided at trial cannot perform those duties because of absence, death, sickness, or other disability.

The defendant conceded at her July 17, 2017 sentencing g hearing "the present impossibility of being sentenced by [Judge Kosik], who is now inactive." (Doc. 113, p. 5 n. 1). Indeed, the record shows that it is undisputed that Judge Kosik could not perform his duties at the time defendant's sentencing was held. The defendant indicates that Judge Kosik was still active in the Fall of 2016 and was presiding over civil cases and, she implies that she could have been sentenced earlier by him. Nonetheless, as the defendant acknowledges, the undersigned read the complete trial transcript prior to her sentencing as well as her PSR and was well aware of the convicted offenses and the crucial evidence presented at her trial. "A

8

successor judge is given broad discretion in determining whether he properly can perform his sentencing duties in a case upon which he did not preside at trial." United States v. Yellowbear, 382 F. App'x 715, 720 (10th Cir. 2010) (citations omitted). "A successor judge need only familiarize himself with the evidence and legal issues involved and exercise informed discretion in imposing sentence." Id. (citation omitted).

As such, the court finds that the defendant's due process claim is dubious and is not a substantial question of law or fact since it is settled by Third Circuit precedent and by Rule 25(b).

Next, the defendant claims that the undersigned should have been precluded from imposing a sentencing enhancement for obstruction of justice based upon the fact she perjured herself during her trial simply because he did not preside over her trial. The defendant's PSR recommended a two-level enhancement for obstruction of justice through perjury pursuant to U.S.S.G. §3C1.1 (Doc. 94). The PSR stated "[t]he defendant testified that she was authorized to continue to issue new policies through Stewart Title Guaranty Company through 2008 despite being advised otherwise by a representative of Stewart Title Guaranty Company in September 2008 by a termination agreement." (Doc. 94). Specifically, "[t]he termination agreement provided that Susan Kevra-Shiner would cease issuing title insurance policies on September 23, 2008." (Doc. 93, p. 4). The PSR also noted that the

government intended to present testimony "in support of the defendant's obstruction at trial." (Doc. 94; *see also* Doc. 93).

At her sentencing hearing conducted by this court, the defendant objected to this enhancement and the court explained why it was overruling her objection and applied the enhancement. The defendant now relies upon this issue to support her present motion and indicates that the sentencing judge did not observe the testimony of any witness at trial, including her own. She concludes that "[t]his issue cannot be resolved with controlling precedent of the Third Circuit." (Doc. 113, p. 6). Once again, however, the defendant does not cite to any case law to support her contention. Nor does the court find any support for it.

Perjury has been found to occur when "a witness testifying under oath or affirmation violates [18 U.S.C. §1621] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or fault memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). Pursuant to U.S.S.G. §3C1.1, a two-level enhancement can be imposed when a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the … prosecution through conduct that related to the defendant's offense of conviction." United States v. Napolitan, 762 F.3d 297, 311 (3d Cir. 2014). "In *Dunnigan*, [507 U.S. at 95] the Supreme Court held

that in order to protect a defendant who is found guilty from a §3C1.1 enhancement simply for having testified on his or her own behalf, the sentencing court must review the evidence and make independent findings addressing each element of the perjury in a separate and clear finding." U.S. v. Barnett, 89 Fed.Appx. 906, 909 (6th Cir. 2003). "Alternatively, the sentencing court may conclude that the enhancement is appropriate on the basis of a finding of obstruction of justice that encompasses all the factual predicates of perjury." Id. (citing Dunnigan, 507 U.S. at 95); United States v. Townsend, 664 Fed.Appx. 202, 206 (3d Cir. 2016). Also, it is in the discretion of the district court if it finds that a defendant committed perjury and applies the sentencing enhancement. Townsend, 664 Fed.Appx. at 206. The government states that "[it] has established that Kevra-Shiner committed perjury during her trial" and, that the undersigned "correctly applied the obstruction of justice perjury enhancement based upon the information provided to him, including the trial record in which the defendant perjured herself." (Doc. 115, p. 6).

As the government recognizes, this court's decision to apply the obstruction of justice through perjury sentencing enhancement was imposed with factual support and the court made findings of perjury. In U.S. v. Santarelli, 604 Fed.Appx. 164, 170 (3d Cir. 2015), the Third Circuit stated that while "it is preferable for the court to make separate findings [of perjury]", they

11

are not required "[w]here application of the enhancement necessarily encompasses the elements of perjury, as supported by the record." As in Santarelli, 604 Fed.Appx. at 170, "the court properly applied the enhancement because [defendant's] trial testimony established the elements of perjury—i.e., falsity, materiality, and willfulness—as noted in the [PSR, Doc. 93, Doc. 94] that the court adopted."

Thus, the court finds that the appeal issue regarding the sentencing enhancement for obstruction of justice based upon perjury is not substantial and not likely to result in a reversal of the defendant's judgment of sentence.

Additionally, at her sentencing hearing, the defendant objected to a proposed enhancement based on the amount of loss under U.S.S.G. §2B1.1(b)(1)(F) as well as the number of victims under U.S.S.G. §2B1.1(b)(2)(A)). At the sentencing hearing, the court overruled her objections detailing the reasons why and applied the enhancements.

The Addendum to the PSR, (Doc. 94, p. 1), stated:

Defense Counsel objects to the total loss of $67,957.20 which is calculated from sixty-nine victims identified by the Government. As a result, [defense counsel] contends that the assessment of Specific Offense Characteristics for total loss (USSG §2B1.1(b)(1)(D), more than ten victims (USSG §2B1.1(b)(2)(A)(I), and vulnerable victims (USSG §3A1.1(b)(1) is not applicable. Defense Counsel argues that the total loss is less than $6,500 and there are no victims.

The probation officer stands by the information set forth in the presentence report and the calculation of the sentencing guidelines. The victims compiled by the Government's

investigation are individuals who entered into title insurance agreements with Stewart Title Guaranty Company through Susan Kevra-Shiner when she was not authorized to do so. These individuals paid a total of $67,957.20. Government Counsel intends to present testimony [at the sentencing hearing] in support of the loss amount, the number of victims, and their susceptibility to fraud.

The PSR, (Doc. 93, p. 5), stated that "[t]he Government has identified 69 victims between August 25, 2008 and December 2, 2009, who entered into title insurance agreements through GK Abstract Company Inc." and that "[t]hey sustained a total loss of $67,957.20." The defendant "operated the abstract company and performed all functions as the president, vice-president, secretary, and treasurer of [GK Abstract Company Inc.]." (Id., p. 9). the victims' names and the amount of loss are specified in the PSR, (Doc. 93, p. 14).

The defendant contends that her 24-month sentence should be decreased by eight levels because the calculated loss analysis under 2B1.1 is not supported by evidence. She argues that a "sustained" loss and reasonably foreseeable pecuniary harm cannot be shown. In particular, the defendant contends as follows:

[T]he actual loss sustained by ten or more victims is difficult to determine because the policies issued may still be honored. The Government could have presented evidence through a representative of Stewart Title that the policies would not be honored, but it did not. Ms. Kevra-Shiner relies on the Statements of Stewart's Vice President as set forth in the Defendant's Sentencing Memorandum. The Sentencing Court was placed in

13

a position where it had to hypothecate whether a loss would occur in the future. To be an "actual loss" under the guidelines relating to the number of victims, the "victim" has to "sustain" an "actual loss." If the policies are honored, the victims did not sustain any loss. If correctly recollecting the Sentencing Court's reasoning, the Court reasoned that it is of no consequence if the policies are honored in the future because the loss sustained was the money provided to Kevra-Shiner for a policy that was worthless. However, if the policies are honored in the future, then the policy was not worthless and the victims did not sustain loss. This issue does not seem to be easily resolved by controlling precedent.

(Doc. 113, p. 6).

The defendant then explains:

when calculating the total amount of loss under Section 2B1.1, the Court must determine what the reasonably foreseeable pecuniary harm would be. Assuming the policies will be honored by Stewart in the future, it is difficult to see how Ms. Kevra-Shiner could have reasonably foreseen that they would dishonor the policies that she sold to the consumers. Therefore, any loss amount was to Stewart Title, rather than to the individual victims. Again, no controlling precedent appears to apply to a situation where insurance policies issued may be honored in the future by the insurance company.

The government responds to the defendant's contention by stating:

This argument is moot; Stewart Title has already stated that it would not honor any of the 88 title insurance policies the defendant illegally issued for her own financial benefit. The total loss is $67,957.20 and because Stewart Title will not honor these policies, this loss is a sustained loss pursuant to the loss analysis under 2B1.1.

In Santarelli, 604 Fed.Appx. at 169, the Third Circuit explained:

For purposes of the relevant enhancement, "loss" is "the greater of actual loss or intended loss." U.S.S.G. §2B1.1 app. n. 3(A). "Intended [l]oss" is "the pecuniary harm that was intended to

14

result from the offense," including "intended pecuniary harm that would have been impossible or unlikely to occur," *id*., from the point of view of "the defendant's subjective expectation," United States v. Geevers, 226 F.3d 186, 188 (3d Cir. 2000) (quoting United States v. Yeaman, 194 F.3d 442, 460 (3d Cir. 1999)). The sentencing court "need only make a reasonable estimate of the loss," U.S.S.G. §2B1.1 app. n. 3(C) ....

As the government states, (Doc. 115, p. 8), "[a]ctual loss means the reasonable foreseeable pecuniary harm that resulted from the offense."

As to the number of victims:

For purposes of the relevant enhancement, a "[v]ictim" is "any person who sustained any part of the actual loss," U.S.S.G. §2B1.1 app. n. 1, meaning "the reasonably foreseeable pecuniary harm that resulted from the offense," Id. app. n. 3(A)(I). "Reasonably foreseeable pecuniary harm," in turn, is "pecuniary harm that the defendant knew, or under the circumstances, reasonably should have known, was a potential result of the offense." Id. app n. 3(A)(iv).

The court finds that its calculation of loss was correct and that all 69 victims suffered a loss. As the government explains:

This loss was the fee they paid the defendant's company, GK Abstract, for title insurance. Title Insurance they thought was valid but was in fact worthless. It was clearly foreseeable that each of the 69 people who purchased these fraudulent polices would not actually have that insurance because the defendant's relationship with Stewart Title was terminated well in advance of the transactions. Stewart Title has confirmed that they will not honor any of these policies.

(Doc. 115, p. 8).

Moreover, with respect to the appeal issue related to the total amount of loss and the analysis under the fourth *Miller* element, the court finds that

15

the defendant's appeal is not "likely to result in a reversal, an order for a new trial, an elimination of her sentence of imprisonment, or a reduction of the term of imprisonment to a period less than the time already served plus the expected duration of the appeal process." U.S. v. Johnson, 2010 WL 1688547, \*3 (E.D. Pa. April 26, 2010). The defendant seeks to argue on appeal that she should have received a shorter term of incarceration based upon an amount of loss owed to the title insurance company in light of the government's inability to prove that the company would not honor the policies. The defendant states that if the court did not impose the amount of loss stated in the PSR, this would have reduced her sentencing range by four levels. However, the government has represented that the title insurance company "has confirmed that they will not honor any of these policies."

The court gave a thorough consideration to all issues raised at sentencing, and "imposed a reasonable sentence likely to be upheld upon appellate review." U.S. v. Johnson, 2010 WL 1688547, \*3. The PSR, (Doc. 93, p.11), indicated that "[b]ased upon a total offense level of 21 and a criminal history category of I, the guideline imprisonment range [for defendant] is 37 to 46 months." The court imposed a below Guidelines range sentence of 24-months incarceration. Thus, the court's sentence was reasonable. *See* Rita v. United States, 551 U.S. 338, 347, 127 S.Ct. 2456 (2007) ("[A] court of appeals may apply a presumption of reasonableness to a district court

sentence that reflects a proper application of the Sentencing Guidelines."); United States v. Goff, 501 F.3d 250, 257 (3d Cir. 2007) (The *Rita* case "supports our prior instruction that 'a within-guidelines range sentence is *more likely* to be reasonable than one that lies outside the advisory guidelines range[.]'") (citation omitted) (emphasis original).

The defendant's final appeal issue regarding her sentence is that the court should not have imposed the abuse of a position of trust or use of a special skill enhancement under U.S.S.G. §3B1.3. "Section 3B1.3 allows an increase of two offense levels '[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense.'" U.S. v. Tai, 750 F.3d 309,316 (3d Cir. 2014). "To receive an enhancement for abusing a position of trust, the facts must show that the defendant took 'criminal advantage of a trust relationship between himself and his victim.'" Id. (citation omitted). The Third Circuit considers three factors to determine whether a defendant had a position of trust or whether a trust relationship exists: "(1) whether the position allows the defendant to commit a difficult-to-detect wrong; (2) the degree of authority which the position vests in defendant vis-a-vis the object of the wrongful act; and (3) whether there has been reliance on the integrity of the person occupying the position." Id. (citation omitted). "Once a position of trust has been found, §3B1.3 requires a finding that the defendant 'abused that

position in a way that significantly facilitated his crime.'" Id. (citation omitted).

The court finds that each factor was satisfied in the defendant's case. The defendant's position as an attorney and title insurance agent allowed her to commit a difficult-to-detect wrong. At trial, the evidence revealed that the majority of people do not check to see if their title insurance policy is valid unless title issues develop with their property. In fact, as the government notes, (Doc. [115](#), p.9), "[the defendant's] crime was only discovered because two financial institutions checked on the validity of title insurance sold by the defendant after the plans were executed." If these institutions did not check on the title insurance, it is possible that the unauthorized policies could have gone unnoticed for many years. The defendant clearly had authority over the submission of the title insurance policies she issued since she was once authorized to issue the policies and she was licensed to do so. The court also finds that the defendant was well aware that her clients relied on her for valid title insurance, especially since two witnesses testified that they only got title insurance due to their past title problems with their properties. It is reasonable for the defendant's clients to have relied upon her experience and representations that the polices were valid and protected their properties. In the first addendum to the PSR, as the probation officer explained:

> It is the position of the probation officer that Susan Kevra-Shiner abused a position of private trust by using her knowledge and skills as a title insurance agent [from December 8, 2003] and the resources of her business to prepare false documentation for her

18

clients and Stewart Title Guaranty Company. The subject's clients believed that she was legitimately acting on behalf of Stewart Title Guaranty Company. Susan Kevra-Shiner's position and the lack of oversight significantly facilitated the commission of the offense and, therefore, a two-level increase pursuant to USSG § §3B1.3 is appropriate.

(Doc. 94, p. 2).

Thus, as the government states, "testimony in the trial is clear, these customers trusted the defendant to help protect their property and by selling worthless title insurance, she violated that trust." (Id., p. 10). As such, the court finds that the defendant had a position of trust and that she "abused that position in a way that significantly facilitated [her] crime." Therefore, the court properly enhanced the defendant's sentence under §3B1.3. Since "the abuse of a position of trust alone is sufficient to justify the two-level enhancement under §3B1.3", id. at 318, the court need not discuss whether the defendant also used a special skill.

Finally, as to the appeal issues the defendant raises regarding her trial, the defendant simply states in her brief,[3] (Doc. 113, p. 8), as follows:

the Government alleges that it had laid the proper foundation for the admission of the email alleging to contain [her] admission of guilt to Michelle Poff. Ms. Kevra-Shiner objected at Trial that the email was part of a larger email thread and through cross

---

[3]Since neither the defendant's brief addresses her other three appeal issues regarding her trial which she identified in her motion, (Doc. 112, p. 4), nor the government's brief, the court will not discuss them herein. Suffice it to say that the court finds these issues do not present a substantial question of law and fact that is likely to result in a new trial for the defendant.

examination attempted to establish that the email was not isolated, as it appeared to be based upon its initial presentation to the jury. In this closely contested Trial, it cannot be said that such an error in admission of a crucial bit of evidence would be harmless.

As the probation officer explained in the PSR, (Doc. 93, p. 4):

Michelle Poff visited Susan Kevra-Shiner's business office in November or December 2008 and retrieved "policy jackets" to prevent the defendant from issuing new policies. It was determined that Susan Kevra-Shiner did not remit premiums to Stewart Title Guaranty Company for transactions she conducted after September 23, 2008. The emails the defendant received and referred to were generic emails sent to all agents and only indicated she was not taken off their email distribution list.

The court finds that this issue does not present a substantial question of law and fact that is likely to result in a new trial for the defendant based on the totality of the government's evidence presented at trial which overwhelming established the defendant's guilt.

Accordingly, the defendant has failed to establish that her motion for release pending appeal should be granted under 18 U.S.C. §3143(b).

III.    CONCLUSION

Based on the foregoing, defendant Kevra-Shiner's motion for bail pending appeal, (Doc. 112), is **DENIED**. The court will grant the defendant's motion for an extension of time to surrender to the BOP, (Doc. 116), until

October 12, 2017. An appropriate order will be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: September 28, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2014 CRIMINAL MEMORANDA\14-0257-01.wpd